**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

In re

**COLLEEN K HOLT**,

Debtor.

Case No. **09-62439-13**

**MEMORANDUM of DECISION**

At Butte in said District this 20th day of August, 2010.

In this Chapter 13 bankruptcy, after due notice, a hearing was held August 10, 2010, in Butte on: (1) Debtor's Motion for Modification of Plan filed July 5, 2010, together with approval of Debtor's Seventh Amended Chapter 13 plan filed August 9, 2010; (2) the Motion to Modify Stay filed on behalf of Vince Stone and Junior H. Troyer on July 7, 2010; (3) the Motion to Modify Stay filed on behalf of Jacqueline Sohm on July 8, 2010; and (4) the Motion to Modify Stay filed on behalf of Donald and Janette Neu on July 8, 2010.  Gregory W. Duncan of Helena, Montana appeared at the hearing on behalf of the Debtor, Daniel R. Sweeney of Butte, Montana appeared at the hearing on behalf of creditors Jacqueline Sohm and Donald and Janette Neu, and Harold V. Dye of Missoula, Montana appeared at the hearing on behalf of creditors Vince Stone and Junior H. Troyer.  The Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana, also appeared at the hearing.  Vince Stone and Junior H. Troyer's Exhibit 1, Jacqueline Sohm and Donald and Janette Neu's Exhibits 1 and 2, and Debtor's Exhibits 1, 2, 3, 6, 9, 10, 14 and 18

1

were admitted into evidence without objection. Daniel E. Riley, Debtor and Diana Morris testified. At the conclusion of the hearing, the Court denied confirmation of Debtor's Seventh Amended Chapter 13 Plan and took the Motions to Modify Stay under advisement.

This Court has jurisdiction in this bankruptcy case under 28 U.S.C. § 1334(a). The pending motions are core proceedings under 28 U.S.C. § 157(b)(2). This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

## FACTS

Debtor filed her voluntary Chapter 13 bankruptcy petition on December 2, 2009. On Debtor's Schedule A filed January 1, 2010, Debtor lists various parcels of real property, including Lots 1, 2, 3, 4 and 5 of Certificate of Survey 144691. Debtor lists the value of Lots 1, 2, 4 and 5 at $60,000 and lists the value of Lot 3 at $80,000. In her Schedules, Debtor also lists Junior Troyer ("Troyer") as having a secured claim of $60,000, which claim is secured by Lot 1 of Certificate of Survey 144691; Vince Stone ("Stone") as having a secured claim of $60,000, which claim is secured by Lot 2 of Certificate of Survey 144691; Jacquelyn Sohm ("Sohm") as having a secured claim of $80,000, secured by Lot 3 of Certificate of Survey 144691; Sohm as having a second secured claim of $60,000 secured by Lot 4 of Certificate of Survey 144691; and Don and Janette Neu ("Neu") as having a secured claim of $60,000 secured by Lot 5 of Certificate of Survey 144691. Debtor amended her Schedule D on February 9, 2010, but did not change the amount owed to the above-mentioned creditors or the stated value of the underlying collateral. Debtor's Amended Schedule A, also filed February 9, 2010, identifies Lot 1 as being 20.404 acres, Lot 2 as being 20.404 acres, Lot 3 as being 20 acres, Lot 4 as being 20.404 acres and Lot 5 as being 20.401 acres.

Debtor's Fifth Amended Chapter 13 Plan dated June 3, 2010, was confirmed June 7, 2010. The Trustee filed a Motion to Vacate the Order Confirming Debtor's Fifth Amended Chapter 13 Plan on July 1, 2010, on grounds BAC Home Loans was provided to be paid as a secured creditor on an arrearage claim. However, BAC Home Loans had not filed a secured claim and Debtor had not filed one on its behalf. Thus, no allowed claim existed upon which the Trustee could make a distribution pursuant to F.R.B.P. 3021.[1] Also, the Trustee argued that Debtor's confirmed Plan provided that the Neus would be paid in an amount in excess of their allowed claim. The Neus filed an amended proof of claim lowering the amount of the claim to be paid. Thus, the Trustee maintained that it would be appropriate for the Court to vacate its Order Confirming Debtor's Fifth Amended Chapter 13 Plan. The Trustee's Motion was granted July 15, 2010. Debtor thus has no confirmed Chapter 13 plan at this time.

Daniel E. Riley ("Riley") is a Montana Certified General Appraiser who has done approximately 30,000 appraisals. Riley did complete appraisals, presented in Summary Appraisal Reports, of Lots 1, 2, 3, 4 and 5 of Certificate of Survey 144691 as of May 7, 2010. *See* Sohm/Neu Exhibit 1, appraisal of Lots 3 and 4; Sohm/Neu Exhibit 2, appraisal of Lot 5; and Troyer/Stone Exhibit 1, appraisal of Lots 1 and 2.

The subject properties are all located in Jefferson County, just North of Whitehall, Montana. Whitehall has a population of approximately 1,200 within the town borders. The lots at issue are presently being used as agricultural property but Riley identified their highest and best use as residential property. The subject properties are vegetated with native grasses. None

---

[1] On July 2, 2010, Debtor filed a Proof of Claim on BAC Home Loans Servicing, LP's behalf. The Trustee filed a Notice of Late Filed Claim with respect to said claim on July 12, 2010.

3

of the properties have trees or other such vegetation. Access to the property is excellent and the properties have typical utility easements. However, Riley noted that property values are depressed and the real estate market in Whitehall has collapsed.

In appraising the property, Riley determined that the Comparable Market Approach was the only viable method for appraising the subject properties as the Income Approach and Cost Approach simply were not applicable. Because of lack of sales in Jefferson County, and in particular Whitehall, Riley deemed it appropriate to use comparable sales from Butte, which is located approximately 25 miles from Whitehall.

After identifying numerous comparable sales, Riley concluded that "the only market in this recession is the bottom feeding investors. These investors are not interested in the smaller 10 acre tracts. They want the larger 20 acre properties so they can subdivide . . . and sell when the market turns around." The price per acre for Riley's comparable sales ranged from $28,395 to $1,391. Riley again noted in his appraisals that the "properties that are selling are the larger 20 plus acre tracts. The smaller 5 to 15 acres are not even getting any lookers. The buyers are definitely investors and they want properties that can be subdivided." Giving the most weight to comparable sales 3 and 6, Riley concluded that the subject property has a value of $3,000 per acre. Riley's market value was based on a one to eight month marketing period.

Debtor lives in Whitehall and is a Real Estate Broker. Debtor tried for six or seven months to sell the five lots at issue to no avail. After creditors began filing foreclosure actions, Debtor filed for protection under the Bankruptcy Code. Thereafter, without notice to this Court, Debtor did boundary adjustments on Lots 1 through 5 and recorded Warranty Deeds to reflect

such boundary adjustments on approximately April 15, 2010.² Debtor's Exhibit 14 shows that Amended Lot 1 is now 61.21 acres, Amended Lot 2 is 10.20 acres, Amended Lot 3 is 10.20 acres, Amended Lot 4 is 10.20 acres and Amended Lot 5 is 10.20 acres. After the boundary adjustments, Debtor listed Amended Lots 2, 3, 4 and 5 for sale with Diana Morris at a price of $85,000 each, or a combined asking price of $340,000.00.

Debtor disputes Riley's appraisals, arguing it was inappropriate for Riley to consider properties outside the Whitehall area. Debtor testified that Butte does not provide good comparable sales because Butte did not experience the big upswings like other markets and thus has a stable real estate market. Debtor testified that buyers in the Whitehall area were coming from Bozeman, but those buyers disappeared "last year" because Bozeman prices have dropped so much. Debtor also criticized Riley's appraisals because they failed to properly reflect the April 2010 boundary adjustments.

Also, even though Debtor is not an appraiser, Debtor contends that a market analysis is the same thing as an appraisal. Debtor testified that based on a review of properties currently on the market, her property is worth more in the neighborhood of $12,500 per acre as opposed to $3,000 per acre, as concluded by Riley. Finally, Debtor asserts that creditors Troyer, Stone, Sohm and Neu loaned Debtor one-half the value of each of the subject lots and thus, four of the subject lots are worth $120,000 and one is worth $160,000.³ In conflicting testimony, Debtor stated that she listed the value of the lots at $60,000 and $80,000 in her schedules because that

---

² The recording date on the warranty deeds is illegible, but appears to be between April 10 and April 19, 2010.

³ Debtor's estimate of value for each of the lots was before her April boundary adjustment.

5

was the value at the time of the loans.  Debtor then sought to correct herself my clarifying that she put down what was owed against the property rather than the value of the property on Schedule A.

Diana Morris ("Morris") is a licensed real estate agent with Great Divide Realty, PLLC and has four of the five subject lots listed for sale.  Morris has been a real estate agent for approximately three years and testified that she has probably sold one small parcel of land such as Debtor's.  Morris has had Debtor's property listed for sale for approximately three months.  Morris has received a couple of calls on Debtor's property, but no offers.

Debtor owes Stone $69,435.00 on Lot 2 and owes Troyer $69,462.50 on Lot 1.  Debtor's obligations to Stone and Troyer were incurred on March 26, 2008.  Debtor executed Montana Trust Indentures in favor of Stone and Troyer on March 26, 2008.  The Montana Trust Indentures were recorded on March 28, 2008.  Stone and Troyer seek relief from the automatic stay under 11 U.S.C. 362(d)(1) and (2).

Debtor currently owes Sohm $140,000 on debt that was incurred on May 12, 2008.  Sohm has a security interest in Lots 3 and 4 pursuant to Montana Trust Indentures dated May 12, 2008.  Sohm's Trust Indentures were recorded May 15, 2008.  Sohm seeks relief from the automatic stay under 11 U.S.C. 362(d)(1) and (2).

Finally, Debtors owes the Neus $60,000 on a debt that was incurred April 22, 2008.  The Neus have a security interest in Lot 5 pursuant to a Montana Trust Indenture dated April 22, 2008, and recorded that same date.  The Neus seek relief from the stay under 11 U.S.C. 362(d)(1) and (2). Debtor opposes the pending motions to modify stay arguing Stone, Troyer, Sohm and the Neus are adequately protected, the unsecured creditors can receive payment if the stay is not

lifted and that the contracts are usurious.

## APPLICABLE LAW

The commencement of a case under the Bankruptcy Code generally stays any and all proceedings against debtors. 11 U.S.C. § 362(a); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). The importance of the automatic stay is discussed in the legislative history of § 362:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 340-42 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 54-55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787 at 5840-41 and 6296-97.

The fundamental debtor protections afforded by § 362(a), however, are not absolute. 11 U.S.C. 362(d). As explained in § 362(d):

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

Under 11 U.S.C. § 362(g), a creditor has the burden of proving that a debtor does not have equity in property, while the debtor has the burden of proof on all other issues to show that the stay should not be modified. *In re Mittlestadt*, 20 Mont. B.R. 46, 52 (Bankr. D. Mont. 2002); *In re Hungerford*, 19 Mont. B.R. 103, 133-34 (Bankr. D. Mont. 2001); *In re National Environmental*

*Waste* Corp., 191 B.R. 832, 836 (Bankr. C.D. Cal. 1996), *aff'd*, 129 F.3d 1052 (9th Cir. 1997); *In re Syed*, 238 B.R. 126, 132 (Bankr. N.D. Ill. 1999); *In re Sauk Steel Co., Inc.*, 133 B.R. 431, 436 (Bankr.N.D.Ill.1991); 11 U.S.C. § 362(g)(2).

As noted above, § 362(d)(1) allows a court to grant relief from the automatic stay for cause, "including the lack of adequate protection."  What constitutes adequate protection for purposes of § 362(d)(1) is not defined in the Bankruptcy Code.  However, "11 U.S.C. § 361 sets forth three nonexclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent."  *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984).

This Court discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D.Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."

[*Matter of Kain*,86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "In recognition of the powers created in bankruptcy law to adjust debts

> and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984)."

In *Mellor* the Ninth Circuit Court of Appeals recognized that an "equity cushion", while not specifically mentioned in the Bankruptcy Code, is a common form of adequate protection:

> [I]t is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Curtis*, 9 B.R. at 112. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 610 (B.Ct.S.D.Cal.1980); *In re Tucker*, 5 B.R. 180, 182 (B.Ct.S.D.N.Y.1980); 2 COLLIER ON BANKRUPTCY, § 361.02[3] at 361-9; (15th ed. 1979). A sufficient equity cushion has been found to exist although not a single mortgage payment had been made. *In re Curtis*, 9 B.R. at 111.

*Id*. *See also In re Interstate Distrib. Co., Inc.*, 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (Recognizing that an equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the Bankruptcy Code.) The *Mellor* Court defined the term "equity cushion" as "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any

9

decrease in the value of the property during time the automatic stay remains in effect." *Id.* at 1400, n.2. *Mellor* also provided that "the claim of a junior lienholder cannot affect the claim of the holder of a perfected senior interest." *Id.* at 1401.

Lack of adequate protection is one example of cause for relief from stay. *In re Ellis*, 60 B.R. 432, 435 (9th Cir. BAP 1985); *In re Avila,* 311 B.R. 81, 83 (Bankr. N.D. Cal. 2004). Case law has almost uniformly held an equity cushion of at least 20% constitutes adequate protection. *In re Timbers of Inwood Forest*, 793 F.2d 1380, 1387 (5th Cir. 1986), *aff'd,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), *In re Mellor*, 734 F.2d at 1401, *Avila*, 311 B.R. at 83. An equity cushion may provide adequate protection even though not a single mortgage payment has been made. *Avila,* 311 B.R. at 83; *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984). In *Avila,* the court noted that "[w]here a creditor is adequately protected by a large equity cushion, the debtor would suffer a substantial loss in the event of foreclosure, and no economic harm to the creditor would result, relief from stay should not automatically follow a default in payment." *Avila,* 311 B.R. at 84; *see In re McCollum*, 76 B.R. 797, 799 (Bankr. D. Or.1987).

Other courts have held an equity cushion below 12% is rarely adequate. *In re LeMay* 18 B.R. 659 (Bankr. D. Mass. 1982) (7% equity cushion is not adequate); *Ukrainian Sav. And Loan Ass'n v. Trident Corp*., 22 B.R. 491 (Bankr. D.D. Pa., 1982) (8.3% equity cushion is insufficient); *In re Jung End in the Berkshires, Inc.*, 46 B.R. 892, 900 (Bankr. D. Mass. 1985) (8.5% is insufficient); *Suntrust Bank v. Den-Mark Const., Inc*., 406 B.R. 683, 700-701 (E.D. N.C. 2009) (11% equity cushion inadequate due to other financial factors, including a $12,000 monthly interest payment.). The burden of proof is always on the debtor to prove that a creditor's interest is adequately protected by an equity cushion. *See* § 362(g)(2).

Whether an equity cushion provides a creditor adequate protection is determined on a case by case basis, not by the mechanical application of a formula. *In re Kost*, 102 B.R. 29 (D. Wyo 1989); *In re Strause*, 97 B.R. 22 (Bankr. S.D.Cal.1989). In *Kost*, the court considered a deterioration in the collateral's value, the lack of insurance on the property, the declining real estate market and the debtor's inability to maintain the property in concluding an 11.5% equity cushion was insufficient. In *Strause*, considering the debtors' poor payment history on secured notes, the court determined a 6% equity cushion was insufficient to adequately protect the creditor despite the debtor's avowed intent to keep the property securing the notes.

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

## DISCUSSION

In this case, the Court concludes that Riley was a credible expert witness and accepts his value of $3,000 per acre for Debtor's property. At such value, Debtor has no equity in Lots 1, 2, 3, 4 or 5.

Furthermore, given Riley's assessment of the real estate market in Whitehall, the Court, in this particular case, rejects Debtor's argument that smaller parcels of property have a higher value per acre than larger parcels. Debtor implied that Riley should have used Bozeman, located 55 miles from Whitehall, for comparable sales, yet stated that buyers from Bozeman disappeared

when the Bozeman real estate market dropped. Debtor's own testimony shows that the Bozeman real estate market is depressed and as a result, as Riley testified, the Whitehall real estate market has "collapsed." In contrast, Debtor testified that the Butte real estate market was stable. Although Debtor tried to reject Riley's use of comparable sales from the Butte area, it would seem to Debtor's benefit that Riley used Butte comparable sales when the Whitehall real estate market has collapsed and the Bozeman real estate market is depressed.

Moreover, the Court rejects Debtor's assertion that her market analysis based upon current listings of properties that have not sold is the same as Riley's appraisal based upon closed sales. Debtor presented absolutely no evidence to suggest that any of the properties now available for sale will ultimately sell for their current asking prices. Debtor's schedules list the value of Lots 1, 2, 4 and 5 at $60,000 and the value of Lot 3 at $80,000. Debtor signed such schedules under penalty of perjury. Debtor's schedules, which, with the exception of Lot 3, comport with Riley's appraisal, more accurately reflect the value of Debtor's real property. Debtor's testimony to the contrary simply was not credible.

Debtor clearly has no equity in the lots that serve as collateral for Stone, Troyer, Sohm and Neu, and Debtor has not made any offer of adequate protection. Absent any equity cushion and absent Debtor's failure to offer any type of adequate protection, the Court finds cause exists to lift the stay under 11 U.S.C. § 362(d)(1).

Similarly, Debtor does not argue that Lots 1, 2, 3, 4, or 5 are necessary for her effective reorganization. Absent any equity in the property and a showing by Debtor that the property is necessary to her effective reorganization, the Court finds that Stone, Troyer, Sohm and the Neus are entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2).

With regard to confirmation of Debtor's Seventh Amended Chapter 13 Plan, it is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *In re McSparran*, 410 B.R. 664, 668 (Bankr. D. Mont. 2009); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241 (Bankr. D. Mont. 2006). Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Therefore, the Debtor has the burden of proof on all elements of confirmation. *Meyer v. Hill (In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

In this case, Debtor's Seventh Amended Chapter 13 Plan treats Stone, Troyer, Sohm and the Neus as having allowed secured claims. Debtor's Seventh Amended Chapter 13 Plan is not confirmable as a result of this Memorandum of Decision. Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED Debtor's Motion for Modification of Plan filed July 5, 2010, together with approval of Debtor's Seventh Amended Chapter 13 plan filed August 9, 2010, is DENIED; Debtor shall have through **Monday, August 30, 2010**, to file a further modified plan; and a hearing on Debtor's further amended Chapter 13 plan shall be held **Monday, September 13, 2010, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA.

IT IS FURTHER ORDERED that if Debtor fails to file a further amended Chapter 13 plan on or before August 30, 2010, this case may be converted to Chapter 7 of the Bankruptcy

13

Code or dismissed without further notice or hearing.

IT IS FURTHER ORDERED the Motion to Modify Stay filed on behalf of Vince Stone and Junior H. Troyer on July 7, 2010, is GRANTED; the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit Vince Stone to pursue his non bankruptcy remedies against the following property of the estate:

> Lot 2 of Certificate of Survey No. 144691, Folio 3I8C, located in the NW¼ of Section 33, Township 2 North, Range 4 West, P.M.M., Jefferson County, Montana; and

the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit Junior H. Troyer to pursue his non bankruptcy remedies against the following property of the estate:

> Lot 1 of Certificate of Survey No. 144691, Folio 3I8C, located in the NW¼ of Section 33, Township 2 North, Range 4 West, P.M.M., Jefferson County, Montana.

IT IS FURTHER ORDERED the Motion to Modify Stay filed on behalf of Jacqueline Sohm on July 8, 2010, is GRANTED; and the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit Jacqueline Sohm to pursue her non bankruptcy remedies against the following property of the estate:

> Lots 3 and 4 of Certificate of Survey No. 144691, Folio 3I8C, located in the NW¼ of Section 33, Township 2 North, Range 4 West, P.M.M., Jefferson County, Montana.

IT IS FURTHER ORDERED the Motion to Modify Stay filed on behalf of Donald and Janette Neu on July 8, 2010, is GRANTED; and the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit Donald and Janette Neu to pursue their non bankruptcy remedies against the following property of the estate:

> Lot 5 of Certificate of Survey No. 144691, Folio 3I8C, located in the NW¼ of

Section 33, Township 2 North, Range 4 West, P.M.M., Jefferson County, Montana.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

15